UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff(s), <br><br> v. <br><br> LUIS F. POMALES-ARZUAGA [1], <br><br> Defendant(s). | Criminal No. 14-609-1 (DRD) |

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION RE: SUPPRESSION**

Pending before the Court are the following motions: (a) *Motion to Suppress Out of Court Identification* filed by the defendant Luis Pomales-Arzuaga (hereinafter the "defendant" or "Pomales-Arzuaga"), at Docket No. 65; (b) the *United States of America's Motion in Support to its Opposition to Defendant's Motion to Suppress* filed at Docket No. 59; (c) the [Second] *United States of America's Motion in Support to its Opposition to Defendant's Motion to Suppress* filed at Docket No. 126; (d) *Minutes of Proceedings* filed at Docket No. 122; (e) *Briefing on Suppression Hearing by Mr. Pomales-Arzuaga* filed at Docket No. 130; and (f) the *Report and Recommendation* issued by the United States Magistrate Judge Silvia Carreno-Coll (hereinafter "Magistrate Judge"), filed on August 15, 2017 at Docket No. 134. For the reasons set forth below, the defendant's motion to suppress is denied.

**Factual and Procedural Background**

Defendant was indicted on October 8, 2014 following a Complaint filed on October 4, 2014. *See* Complaint filed at Docket No. 1, and the Indictment filed at Docket No. 8. The facts that triggered the Indictment may be summarized as follows.

On or about September 18, 2014, the defendant was charged together with other persons, within the jurisdiction of this Court, did intentionally take a motor vehicle, that is, 2013 Nissan Frontier, white in color, bearing Puerto Rico license plate number 927-985, VIN No. 1N6BD0CT5DN731337, that had been transported, shipped and received in interstate and foreign commerce, from the presence of E.G.F. (male adult), by force, violence, and intimidation, with the intent to cause death and seriously bodily harm. All in violation of 18 U.S.C. § 2119(1) and (2). The defendant was also charged with aiding and abetting other persons during the commission of this crime. *See* Count One of the Indictment at Docket No. 8.

On that same date, the defendant was further charged for carrying and using a firearm, as well as aiding and abetting other persons in the commission of the crime, including the brandishing of a firearm to commit a crime of violence. All in violation of 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c). *See* Count Two of the Indictment. All of the above crimes, entail a sentence of more than one year, if found guilty.

The Indictment also provides that should the defendant be found guilty in Count Two, Mr. Pomales-Arzuaga shall forfeit to the United States, any firearms and ammunition involved or used in the commission of the offense, as provided by 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c). *See* the Firearms and Ammunition Forfeiture Allegation included in the Indictment at Docket No. 8.

Mr. Pomales-Arzuaga was arrested on October 4, 2014. Defendant was arraigned on October 9, 2014, and ordered detained without bail on the same date. *See* Minutes of October 9, 2014 at Docket No. 10, and the *Order of Detention Pending Trial* of October 9, 2014 at Docket No. 11.

On April 16, 2016, the defendant filed a *Motion to Suppress Out of Court Identification* filed at Docket No. 65, on the grounds that the "line up identification was suggestive in so far as the four

additional subjects placed in the line up along with the defendant were: (i) all police officers of shorter height than the defendant; (ii) they didn't have a beard chin and a black beard was painted in their faces; (iii) they were requested to get close to the glass where the obvious physical differences were visible and highlighted the defendant's persona." *See* Docket No. 65, p.1.

Mr. Pomales-Arzuaga further alleges that at the time he "was placed in a lineup with four policemen, he had not only been detained but was a suspect in the case." *Id.*, p.2. The defendant alleged that he was deprived to have an attorney present at the time of the lineup, all in violation of his constitutional rights, and cites *Neil v. Biggers*, 409 U.S. 188 (1972), and *U.S. v. Wade*, 388 U.S. 218 (1967), in support of his argument that the Sixth Amendment of the United States Constitution "guarantees an accused the right to counsel at his trial and any critical stage in the prosecution." *See* Docket No. 65, page 2. "A critical stage in the prosecution included any proceedings which might either determine the accused's fate or impair his right to fair trial." *Id.*, p.2.

Lastly, the defendant alleges that "in a suppression hearing the court need to conduct a two-step test in evaluating a challenge to the admissibility of a lineup identification." *Id*., p.4. "A defendant must establish that the lineup was unduly suggestive." *Id.* "Then the court must determine whether the identification was nevertheless reliable. *U.S. v. Harris*, 281 F.3d 667 (7th Cir.2002).

The United States filed it *Motion in Opposition to Motion to Suppress Out of Court Identification* at Docket No. 59, on the following grounds:

(a) The lineup was conducted after the defendant and two other male individuals, were arrested by agents of the Puerto Rico Police Department ("PRPD") while driving the stolen 2013 Nissan Frontier, taken to the Police Precinct, and advised of the *Miranda* rights, on October 3, 2014.

Later that same date, while no criminal charges had been filed against Mr. Pomales-Arzuaga, the police agents prepared a physical lineup of the defendant and another occupant of the 2013 Nissan Frontier.

(b) The PRDP set up several lineups, as there were more than one individual arrested. As for the defendant, the PRPD agents gathered "four subjects that were police officers [and/or agents] who had not had any prior contact with the victim in this case, and with physical characteristics similar to defendant's in height, build, skin complexion, hair color and style, as facial features." The defendant was placed in the lineup together with the other four subjects, "in a small room with a one-way glass window at approximately one and a half foot of distance from the glass. Each was wearing the same clothes and an individual number in the front." *See* Docket No. 59, p.p.2-3.

(c) "At no time did defendant request the presence of an attorney before, during or after the lineup was conducted." "After observing the five individuals, E.G.F. immediately identified defendant, who was bearing the number five (5) on his chest,[1] to the PRPD agents as one of the two men who committed the carjacking on September 18, 2014." *Id.*, p.3.

After the lineup concluded, the FBI special agents responded and initiated an investigation into possible violations of federal law, and assumed jurisdiction in the instant case. The FBI agents also advised the defendant of his *Miranda* rights, and interviewed him. Defendant was later charged

---

[1] The Court notes that pursuant to the Finding of Facts of the *Report and Recommendation*, the Magistrate Judge determined that "the defendant was wearing [at the lineup] the number "4." The identification was memorialized in a Line-Up Report. *See* Certified Translation of the Minutes of the Lineup, at Docket No. 124-2." *See Report and Recommendation*, Docket No. 134, p.4. *See also* Government's Exhibit List at Docket No. 124, which comprises two exhibits: Exhibit 1: Lineup Report, and Exhibit 2: Photograph of Lineup. Hence, the Court agrees with the finding of fact made by the Magistrate Judge, as to the fact that "the defendant was wearing the number 4," as it is fully supported by the record.

under federal law, and the October 8, 2014 Indictment followed.

The Government moved to deny the defendant's motion to suppress on the grounds that the defendant had not been charged with criminal charges at the time of the lineup. Hence, there is no Sixth Amendment violation, as there is no right to have an attorney present at this stage of the proceedings. Moreover, the lineup conducted by the PRPD "was not unnecessarily suggestive and did not violate defendant's due process." *See* Docket No. 59, p.5, and the *United States of America's Motion in Support to its Opposition to Defendant's Motion to Suppress* filed at Docket No. 126.

On April 1, 2016, this matter was referred to the Magistrate Judge for report and recommendation. *See* Docket entries No. 62 and 63.

After several hearings,[2] on August 15, 2017, the Magistrate Judge entered a *Report and Recommendation* at Docket No. 134. As of this date, no objections have been timely filed,[3] thus, the Court deems this matter submitted. For the reasons set forth below, the *Report and Recommendation* issued by the Magistrate Judge at Docket No. 134, is hereby adopted *in toto*, as supplemented herein.

---

[2] The record shows that the Magistrate Judge set the suppression hearing for May 25. 2016, but had to be cancelled due to the fact that the defendant was in the process of retaining new counsel. On June 15, 2016, attorney Armenteros was retained by the defendant, and immediately moved the Court to schedule a status conference. *See* Docket entries No. 73 and 76. On July 18, 2016, the undersigned held a Status Conference and referred the motion to suppress for Report and Recommendation to the Magistrate Judge. The Magistrate Judge set a Status Conference for September 21, 2016. The record shows that, after about ten motions for continuances by the defendant's counsel, the suppression hearing was finally held on February 28, 2017; March 27, 2017 and April 27, 2017. *See* Minutes at Docket entries No. 117, 118 and 122.

[3] The *Report and Recommendation* was entered on August 15, 2017 at Docket No. 134, the objections to the *Report and Recommendation* were due on August 29, 2017. Thereafter, the record shows that the defendant's counsel requested four more extensions of time to file the objections to the *Report and Recommendation*. *See* Docket entries No. 135, 137, 140 and 142. The last extension of time was due on May 4, 2018. As of this date, the *Report and Recommendation* stands unopposed. We thus examine only for "plain error," *Nettles v. Wainright,* 677 F.2d 404, 410 (5th Cir.1982, *en banc*); *Douglas v. United Service Ass.*, 79 F.3d 1415, 1419 (5th Cir.1996, *en banc*).

**Standard of Review**

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); Local Civil Rule 72(a) of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ.R.").

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F. 2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F. 2d 22, 30-31 (1st Cir. 1992).

In the instant case, no objections to the Magistrate Judge's *Report and Recommendation* have been filed. Thus, in order to accept the unopposed *Report and Recommendation*, the Court needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996)(*en banc*)(extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)(*en banc*)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras-Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R. 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding Fed.R.Civ.P 72(b)); *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa. 1990)("when no objections

are filed, the district court need only review the record for plain error").

As previously explained, since the Magistrate Judge's *Report and Recommendation* is unopposed, this Court has only to be certain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. Hence, after a careful analysis, the Court finds no "plain error" and agrees with the Magistrate Judge's conclusions, as supplemented herein.

**Analysis**

As stated above, the *Report and Recommendation* issued by the Magistrate Judge, Docket No. 134, stands unobjected. After a careful review and in absence of plain error, the Court hereby **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate Judge's *Report and Recommendation,* Docket No.134, to the instant Order:

> In this case, the lineup was conducted on October 3, 2014, after defendant was arrested, but before he had been indicted or otherwise formally charged with a criminal offense. The formal proceeding began with the filing of the Criminal Complaint, on October 4, 2014. Hence, Pomales-Arzuaga's Sixth Amendment rights were not violated for lack of counsel during the lineup. *See Report and Recommendation*, Docket No. 134, p.14.

The facts of this case occurred on September 6, 2014. The lineup occurred two weeks thereafter, on October 3, 2014. In the *interim*, the Vega Baja Robbery Division of the Puerto Rico Police Department (hereinafter the "PRPD"), dealing with stolen cars referred to the investigator of the case that they arrested individuals dealing with robberies and carjackings in the San Juan area. A car reported stolen and carjacked on September 18, 2014 matched the carjacked car. In the instant case, the agent went to Vega Baja and interviewed all the suspects and later spoke to the victim who was carjacked by two persons.

The agent proceeded to prepare the lineup with the support and "facial fillers" who showed

the same complexion, age, body built and hair color." *See* Docket No. 137, p. 3. The individuals at the lineup were all policemen and/or agents of the PRPD. The agent also used "phone books for the participants to stand during the lineup to the level height and painted goatees on the fillers that did not have facial hair" so that all the individuals appear to have similar facial hair. All five individuals were about the same height and complexion, as the victim could only see them from the one-way glass mirror from the waist up. Further descriptions are described in the *Report and Recommendation* at Docket No. 134, p.p. 2 and 3.

The victim identified the defendant within "fifteen to twenty seconds of a curtain lifting from the one-way mirror." *Id.*, p.4. The victim identified the individual wearing the "number 4." *Id*. The alleged carjacker was the tallest of all the participants, according to Agent Rodriguez-Santiago, he included the defendant because "he matched the other physical characteristics listed by the victim, and he was driving the carjacked vehicle." *See Report and Recommendation*, Docket No. 134, p.5.

Defendant Pomales Arzuaga challenged the individual lineup alleging that: "(1) the additional subjects placed in the identification lineup were shorter in height than the defendant; (2) they did not have facial hair and had a black goatee painted on their faces; (3) they were asked to get close to the glass that separate the victim from the lineup, thereby making the physical differences more apparent." *See Report and Recommendation*, Docket No. 134, p.p.5-6.

After identifying the two leading cases as to "impermissible suggestive" lineups, *United States v. Gray*, 958 F.2d 9, 13-14 (1st Cir.1992); *United States v. Jackman*, 837 F.Supp. 468, 469-70 (D.Mass. 1993), and after analyzing whether the identification process was "impermissibly suggestive," then the Court moves to examine whether under the "totality of the circumstances," the identification procedure violated the due process of the accused, following *Gray*, 958 F.2d at 14;

8

*United States v. Alexander*, 868 F.2d 492, 295 (1st Cir.1989). The Honorable Magistrate Judge Carreno concluded that [a]n identification infected by improper police influence . . . is not automatically excluded." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012).

Hence, the Magistrate Judge then examined the second prong which requires various factors to be examined under *Neil v. Biggers*, 409 U.S. 188 (1972) (examining the "opportunity the witness to view the criminal at the time of the crime," "the degree of attention of the witness," "the accuracy if the prior assumption of the criminal," "the level of certainty demonstrated at the confrontation," and "the time between the crime and the confrontation." *Cooper v. Bergeron*, 778 F.3d 294, 300 (1st Cir.2015)(citing *Mason v. Brathwaite*, 432 U.S. 98, 114 (1977)).

The main issue is the "reliability" of the witness leading to "if the indicia of reliability . . . outweigh the corruption effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted." *Moore v. Dickhaute*, 842 F.3d 97, 101 (1st Cir.2016). Reliability is, thus, "the linchpin in determining the admissibility of identification testimony ... ." *Brathwaite*, 432 U.S. at 114.

The Magistrate Judge determined that the height difference between the participants at the lineup was not unnecessarily suggestive. The defendant alleged that "body parts are proportional to the height," and shorter participants could be more easy recognized because their 'shape would be weird.'" *See* Docket No. 134, p. 8.

The Magistrate Judge concluded that "raising a person a few inches does not automatically rearrange their physical appearance." *See* Docket No. 134, p.8. "The lineup picture shows that all the participants appeared to have a similar height, a result of Agent Rodriguez-Santiago's creative staging." *Id.* The Magistrate Judge concluded that "the victim was placed at least 1 to 1 ½ away

9

from the one-way mirror, thus making it impossible to see from his vantage point which participants were shorter." *See* Docket No. 134, p.p.8-9. The victim stated that the defendant was approximately 5'6" tall. Defendant Pomales is 6 feet tall. The height constitutes the Government's weakest point. *Id.*, p.10.

However, the identification procedure is not exclusively as to "height" of the defendant, as the victim is not required to produce a "description" of the assailant "be painstakingly precise." *United States v. Pena Bonilla*, 998 F.Supp. 121-125 (D.P.R.1998)(citing *United States v. Lau*, 828 F.2d 871, 875-76 (1st Cir.1987). The victim, except for the defendant's height, clearly identified and matched the other characteristics of the defendant even though the defendant was "driving the carjacked vehicle when he [the defendant] was arrested." *See* Docket No. 134, p.11. Hence, the Magistrate Judge concluded that "these two elements, taken together, warranted his submission for identification through a police-arranged lineup." *Id.*

The defendant also alleged that "painting beards on some of the participants to simulate [the defendant's] goatee was 'ludicrous, bordering on comical.'" *See* Docket No. 124, p.11. First, two weeks had elapsed from the carjacking and there was no guarantee that the defendant would remain with the goatee. Further, as stated by the Magistrate Judge "the line up participants all appear to have similar facial hair. From a distance, as the victim observed then, the painted-on goatees do not look "comical" or "cartoonish." They merely appear as a shadow. *See* Docket No. 134, p.11.

"Studying the record as a whole, we fail to see the 'drastic differences' in the physical aspect of the defendant, versus the other participants, on which defendant bases his request for exclusion." *See* Docket No. 134, p.p.11-12. Further, "exact physical similarity . . . is not required in corporeal identifications." *United States v. Torres Concepcion*, 2007 WL 2493691 (D.P.R.2007)(citations

omitted).

The Magistrate Judge has concluded under *Biggers* that "if and only if, [the] court finds that the first prong is satisfied, is it to address the second prong of the test." *United States v. Jackman*, 837 F.Supp. 468, 470 (D.Mass.1993). *See* Docket No. 134, p.12.

The defendant's last argument is grounded on the Sixth Amendment. Defendant argued that 'his rights were violated because he should have been afforded the right to counsel during the lineup." *See* Docket No. 134, p.13. The Magistrate Judge has concluded that "with respect to corporal identifications, an accused is entitled to the presence of counsel if the identification is conducted at or after the instigation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *See United States v. Wade*, 388 U.S. 218, 237 (1967) (**a post-indictment pretrial lineup is considered "a critical stage of the criminal prosecution" and, thus, the absence of counsel denies the accused his Sixth Amendment right to counsel**) [emphasis ours]; *Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (the Court held that the right to counsel at a lineup does not attach during a routine police investigation taking place prior to the formal commencement of prosecutorial proceedings). *See* Docket No. 134, p.p.13-14.

The Court, however, wishes to include part of the analysis made by the United States Court of Appeals for the First Circuit in *Moore v. Dickhaut*, 842 F.3d 97, 101 (1st Cir.2016), related to the pretrial identification proceedings, which is critical in the instant case.

> The Supreme Court has held that pre-trial identifications resulting from procedures "so impermissibly suggestive as to give rise to a very substantial likelihood of . . . misidentification" may offend due process. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Neil v. Biggers*, 409 U.S. 188, 198 (1972). Where the likely mistake is "irreparable," subsequent courtroom identifications may be similarly

11

prohibited. *Simmons*, 390 U.S. at 384. **But, even where this standard is met, the federal constitution does not require automatic exclusion of the identification. Rather, if the indicia of reliability are strong enough to outweigh the corrupting effect of the . . . suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth."** *Perry v. New Hampshire*, 565 U.S. 228 (2012). (Emphasis ours).

. . .

**It bears emphasis that the issue of reliability "comes into play only after the defendant establishes improper police conduct**." *Perry* at 726. Absent unnecessarily suggestive procedures, reliability is ensured through traditional trial protections, such as, "the presence of counsel at post indictment lineups, vigorous cross-examinations, protective rules of evidence, and jury instructions on both the fallibility of eye-witness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, at 721; *see also United States v. Melvin*, 730 F.3d 29, 34 (1st Cir.2013) ("Jurors should not be treated as gullible dupes, and . . . identification evidence should be withheld from them only in extraordinary cases." (citations omitted)). (Emphasis ours).

Finally, defendant Pomales Arzuaga stresses on a violation of the Sixth Amendment right to having a lawyer present at the lineup. The Magistrate Judge confirmed the matter at Docket No. 134, p.p. 13-14. "He claims that his rights were violated because he should have been afforded the right to counsel during the lineup. With respect to corporal identifications, an accused is entitled to the presence of counsel if the identification is conducted at or after the instigation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information or arrangement." *See* Docket No. 134, p.p.13-14.

## Conclusion

Because the defendant had not been indicted at the time of the pretrial lineup, the defendant did not require the assistance of counsel, as the requirement starts with the filing of the indictment pursuant to *United States v. Wade*, 388 U.S. 218, 237 (1967). *See also Kirby v. Illinois*, 406 U.S. 690 (1972) holding that assistance of counsel is not required during a routine police investigation

taking place prior to formal commencement of prosecutorial proceedings.

The Court has find no plain error by the Magistrate Judge as to the finding of facts and conclusions of law as to the lineup in the *Report and Recommendation* issued by the Magistrate Judge.

For the reasons set forth above, the Court finds that there is **no plain error** in the Magistrate Judge's *Report and Recommendation*, Docket No. 134. Hence, the *Report and Recommendation* is hereby adopted *in toto*, as supplemented herein.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of June, 2018.

> s/Daniel R. Dominguez
> DANIEL R. DOMINGUEZ
> Senior United States District Judge